**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No.: 9:21-cv-81537**

ROSA WILLIAMS, GARY FRASHAW,
and THOMAS HYLAND,

     Plaintiffs,

   v.

CITY OF WEST PALM BEACH, FLA.,

     Defendant.

_____/

**COMPLAINT FOR DECLARATORY**
**<u>AND INJUNCTIVE RELIEF AND DAMAGES</u>**

**INTRODUCTION**

 1. Plaintiffs ROSA WILLIAMS, GARY FRASHAW, and THOMAS HYLAND
need assistance from others to help meet their basic needs including access to food,
clothing, shelter, and housing. They reside (or resided at all pertinent times) in the City
of West Palm Beach and either hold signs with messages conveying their need for
assistance from vehicles on public roadways throughout the City or orally ask for help
from pedestrians in the downtown or Northwood areas of the City. Defendant CITY
OF WEST PALM BEACH, FLA. (the "City" or the "Defendant") adopted a content-
based ordinance prohibiting speech soliciting charitable assistance in these traditional
public fora. Police, and private security working under contract and at the direction of
the City and/or the Downtown Development Authority, have warned Plaintiffs they will
be arrested for such speech in these public fora.

1

2.      Plaintiffs bring this civil rights action pursuant to 42 U.S.C. §1983 for violations of their First Amendment rights under the United States Constitution.

3.      The City Council adopted a City ordinance regulating panhandling and soliciting, codified at Sections 54-126 to 54-148 of the West Palm Beach City Code. (Ex. 1.)

4.      Plaintiffs challenge portions of that ordinance codified in § 54-147(a)(1) and § 54-127(2), (3) & (5) of the West Palm Beach City Code ("the ordinance" or the "challenged provisions"). Plaintiffs do not challenge the portion of the ordinance prohibiting "aggressive panhandling" as defined by § 54-126, "public indecency" as defined in § 54-146, or the regulations that pertain to panhandling or soliciting on private property set forth in § 54-127(4) and § 54-147(a)(2).

5.      Plaintiffs challenge the constitutional validity of the City's ordinance, both facially and as-applied to them by Defendant and its agents engaging in state functions pursuant to official policy, practice, or custom of the City.

6.      Plaintiffs seek injunctive relief against future enforcement of the ordinance, declaratory relief, and damages against the City for injury caused by past enforcement.

**JURISDICTION**

7.      This action seeks declaratory and injunctive relief and damages pursuant to 42 U.S.C. §1983 for past and ongoing injury to Plaintiffs' First Amendment rights.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1331, 1343(a)(3) & (4) and the Declaratory Judgment Act, 28 U.S.C. §§2201 & 2202.

## VENUE

9.      Venue is proper in the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. §1391(b). Plaintiffs reside (or resided at all pertinent times), and all of the acts and omissions complained of herein occurred and will continue to occur, in the West Palm Beach Division of the Southern District of Florida.

## PLAINTIFFS

10.      Plaintiff ROSA WILLIAMS is a resident of West Palm Beach, Florida. She currently does not have permanent housing. Williams has lived in the City her entire life. City police officers have repeatedly warned Williams, under threat of arrest, for holding signs soliciting charitable donations on public roadways in the City. Williams used to solicit charity in the downtown area of West Palm Beach but was repeatedly warned to stop or move along by private security guards, working under contract and at the direction of the City and/or the Downtown Development Authority, under threat of calling City police to arrest her. As a result and because of her fear of arrest and prosecution for a violation of the ordinance, Plaintiff WILLIAMS has relocated and reduced the frequency with which she solicits for donations in the City of West Palm Beach. She wants and needs to continue to solicit donations for her survival.

11.      Plaintiff GARY FRASHAW is a resident of West Palm Beach, Florida. He recently entered a housing program that provides him with temporary rental

assistance. Prior to entering this program, he would frequently sleep in public parks or other public areas. Frashaw has lived in the City all his life. Private security guards working under contract and at the direction of the City and/or the Downtown Development Authority have repeatedly warned Frashaw, under threat of calling City police to arrest him, for orally asking for money or other help from pedestrians in the downtown and Northwood areas of the City. Frashaw also has been warned and told to move along by West Palm Beach City Police officers while holding a sign alongside roadways in the City while asking for charity. As a result, and because of his experience with private security's threat to pursue arrest and prosecution for a violation of the ordinance, Plaintiff FRASHAW significantly reduced the frequency with which he solicits donations in the City of West Palm Beach and has limited his approach to oral requests without a sign because of fear of prosecution. He wants and needs to continue to solicit donations for his survival.

12.    Plaintiff THOMAS HYLAND is a resident of Palm Beach County, Florida, and resided in the City of West Palm Beach, for four years until June 2021. He recently accepted employment in Lake Worth Beach that includes room and board. When he did not have permanent housing, he would sleep at emergency shelters, in public areas outdoors, or he would rent a room when he had the money, in the City of West Palm Beach. City police repeatedly warned Plaintiff HYLAND, under threat of arrest, for holding a sign asking for money or other help from drivers in vehicles in multiple locations across West Palm Beach. West Palm Beach Police have told Hyland to move to a location outside of certain areas of the City in order to avoid arrest. As a

result, and because of his experience of threat of arrest and prosecution from City police for a violation of the ordinance, Plaintiff HYLAND had reduced the frequency with which he solicited for donations in the City of West Palm Beach and had relocated his practices for soliciting for donations to outside the City of West Palm Beach for fear of prosecution. He wants to be allowed to solicit for donations if needed for survival.

## DEFENDANT

13.     The City is a municipal entity organized under the laws of the State of Florida with the capacity to sue and be sued.

14.     The City is the legal entity responsible for the police department known as the City of West Palm Beach Police Department ("City police"). City police have the traditional authority of police forces to enforce Florida statutes and City ordinances.

15.     The City is sued for injunctive and declaratory relief on the basis of acts of officers, agents, and employees of the City taken pursuant to official policy, practice, or custom.

16.     At all times relevant to this complaint, Defendant and their police officers, employees, and agents, were acting under color of state law.

## FACTUAL ALLEGATIONS

### The City's Ordinance

17.     The City Council adopted an ordinance regulating panhandling and soliciting, codified at Sections 54-126 to 54-148 of the West Palm Beach Code of Ordinances, in 1979.  (Ex. 1.)

18.     The ordinance was amended on December 28, 2020, to add additional prohibited conduct and new penalties to Sections 54-146, 54-147, and 54-148. (Ex. 2.)

19.     The City Council sets final policy on the creation and adoption of City ordinances.

20.     The ordinance is an official policy of the City.

21.     The ordinance prohibits soliciting "money or other things of value" or to "solicit the sale of goods or other services" from "any operator or passenger of a motor vehicle that is in traffic on a public street, whether in exchange for cleaning the vehicle's windows, or for blocking, occupying or reserving a public parking space, or directing the occupants of the motor vehicle to a public parking space; however, that this subsection shall not apply to services rendered in connection with emergency repairs requested by the operator or passengers of such vehicles." (Ex. 1, §54-127(5).)

22.     The ordinance prohibits soliciting "money or other things of value" or to "solicit the sale of goods or other services" in "any public transportation vehicle, or bus station or stop." (*Id.* § 54-127(2).)

23.     The ordinance prohibits soliciting "money or other things of value" or to "solicit the sale of goods or other services" "within 15 feet of any entrance or exit of any bank or check cashing businesses or within 15 feet of any automated teller machine during the hours of operation of such bank, automated teller machine or check cashing business without the consent of the owner or other person legally in

possession of such facilities; however, that when an automated teller machine if located within an automated teller machine facility, such distance shall be measured from the entrance or exit of the automated teller machine facility." (*Id.* § 54-127(3).)

24.    For the purposes of enforcing the prohibited acts enumerated in § 54-127, the City defines "solicit" as "to request an immediate donation of money or other thing of value from another person regardless of the solicitor's purpose or intended use of the money or other thing of value. The solicitation may be, without limitation, by the spoken, written, or printed word, or by other means of communication." (*Id.* § 54-126.)

25.    The ordinance further prohibits engaging "in an act of panhandling or soliciting" in the "public areas of the downtown area and the Northwood area." (*Id.* § 54-147(a)(1).)

26.    For the purposes of enforcing the prohibited acts enumerated in § 54-147, the ordinance defines panhandling and soliciting as "to request an immediate or future donation of money or other thing of value from another person, regardless of the panhandler's purpose or intended use of the money or other thing of value. The panhandling and soliciting may be, without limitation, by the spoken, written, or printed word, or by other means of communication." (*Id.* § 54-146.)

27.    Penalties for violating the ordinance are set forth in § 54-148, which references § 1-13, and provides for punishments "by a fine not exceeding $500.00 or imprisonment for a definite term not exceeding 60 days, or both such fine and imprisonment." (*Id.* § 54-148.)

28.     A violation of the ordinance may also be subjected to penalties and procedures set forth in Fla. Stat. §§ 162.22 & 162.23. (*Id.*)

29.     The ordinance prohibits charitable solicitation by individuals on traditional public fora in the City.

30.     Charitable solicitation is a form of expression that is protected under the First Amendment of the U.S. Constitution, whether the solicitation is for one's personal needs or made charitably on behalf of other recipients.

31.     Public sidewalks, streets, parks, and medians are traditional public fora.

32.     Social services to help persons experiencing homelessness and poverty, including shelters, day centers, food, and the public library are all centrally located in or near the downtown and Northwood areas of the City.

33.     Other forms of speech or expression not involving charitable solicitation are not prohibited, making the ordinance a content-based restriction on speech in traditional public fora and presumptively unconstitutional.

34.     In July 2020, an Assistant City Attorney advised the City Attorney in a memo titled "Constitutional Validity of Panhandling Ordinance" that because the City's ordinance "regulates 'the topics discussed,' i.e., 'an immediate or future donation of money or other thing of value,' it may be considered content based and subject to strict scrutiny. Thus, without the City's Ordinance being narrowly tailored to serve compelling state interests, it *may* be found unconstitutional." (emphasis in original).

35.     Despite the knowledge that the City's ordinance had constitutional deficiencies, the City proceeded to amend its ordinance without addressing the core

issue that made the ordinance constitutionally infirm—regulating speech based on the topic or subject matter discussed. Instead, the City expanded the geographic scope of the ordinance in the 2020 amendments.

36.     The Whereas clauses to Ordinance No. 4919-20 assert the City's purported interests in adopting the 2020 panhandling and solicitation amendments. (Ex. 2, at 1.)

37.     The City's purported interests for expanding the geographic scope of the ordinance to include Northwood in addition to downtown are that: "panhandling and/or soliciting in the downtown and Northwood areas of the City blocks pedestrian and vehicular traffic and has become extremely disturbing and disruptive to residents and businesses, and has contributed to the loss of access to and enjoyment of public places and businesses." (*Id.*)

38.     The City also alleges that its interests in adopting the 2020 amendments to the ordinance are "that the blockage of ingress and egress into and from commercial businesses and other public areas as well as the impedance of pedestrian walkways and other public right-of-ways caused by panhandling and soliciting in the downtown and Northwood areas of the City implicates the compelling government interest of the City in protecting the health, safety, and welfare of its citizenry and visitors in preserving police and fire department access to such right-of-ways in order to save lives." (*Id.*)

39.     Prior to adoption of the 2020 amendments to the City's ordinance, the ACLU of Florida, the ACLU of Palm Beach County Chapter, and Southern Legal

Counsel sent a letter to the City advising that the ordinance and the proposed amendments were unconstitutional content-based restrictions on speech that do not survive strict scrutiny.

40.     Counsel for Defendant City of West Palm Beach also warned Defendant that the ordinance "may be considered content based and subject to strict scrutiny. Thus, without the City's Ordinance being narrowly tailored to serve compelling state interests, it *may* be found unconstitutional."

41.     Despite these warnings about the ordinance's constitutionality, both from inside the City Attorney's Office and from outside legal organizations, the City proceeded to adopt the 2020 amendments to the City's ordinance.

### Enforcement of the City's Ordinance

42.     City police have issued warnings, citations, and arrested individuals for violating the City ordinance.

43.     West Palm Beach Police Department "Event Reports" identify 603 incidents in 2019, 803 in 2020, and 97 in the first two months of 2021, all involving panhandling for a total of 1503 events involved panhandling. These incidents resulted in various actions, including trespasses, formal warnings and "move along" orders.

44.     Since 2019, City police have conducted undercover operations to catch individuals for violations of the ordinance downtown.

45.     Since 2019, City police have conducted patrols of traffic intersections to warn individuals holding signs soliciting charity from vehicles to stop under penalty of arrest.

46.     Prior to April 2021, City police arrested individuals holding a sign on public roadways, at traffic intersections, and in medians for soliciting without a permit in the roadway in violation of Fla. Stat. § 316.2045(2).

47.     The 2021 Florida Legislature repealed Fla. Stat. § 316.2045(2). 2021 Fla. Sess. Law Serv., Ch. 2021-6 (H.B. 1), § 2, eff. April 19, 2021. The legislative staff analysis and fiscal impact statement noted that this section of the state statute was found to be unconstitutional by federal courts.

48.     Since the repeal of the state statute, City police rely on §54-127(5) of the City's ordinance to prohibit the same speech previously prohibited by the now-repealed state statute. Thus, individuals holding signs soliciting charity on public roadways remain subject to arrest under the City's ordinance for speech no longer prohibited by state statute.

**Enforcement of the City's Ordinance by Private Security**

49.     The City, and the Downtown Development Agency, contracts with Professional Security Consultants ("PSC"), a private security company, to patrol areas of downtown West Palm Beach, city parks, and the Northwood area of the City.

50.     The Downtown Development Agency was created in 1967 as an independent special taxing district to promote and enhance a safe, vibrant Downtown for residents, businesses and visitors through the strategic development of economic, social and cultural opportunities. The Downtown Development Agency, the City, and PSC coordinate and collaborate on issues related to homelessness and preventing panhandling in downtown and Northwood areas.

51.     At the direction of the City and the Downtown Development Agency, PSC security guards are directed to address quality of life issues, including ones that arise with homeless persons, to enforce park rules and curfews, and to be proactive in identifying and reporting suspicious persons or other situations to the police when necessary.

52.     City police and City officials, and Downtown Development Agency officials, coordinate and direct PSC officers under contract with the City and the Downtown Development Agency to proactively identify suspicious persons, ask them to move along, and to call police when persons are panhandling in violation of the City ordinance regulating panhandling and soliciting.

53.     PSC security guards have warned individuals to stop panhandling under threat of calling the police, and PSC security guards have called City police or otherwise cooperated with City police and City officials to report individuals panhandling in violation of the City ordinance.

### Facts Concerning Individual Plaintiffs

**Rosa Williams**

54.     Plaintiff Williams has lived in West Palm Beach for her entire life.

55.     Williams does not have a fixed address, and when she cannot find a place to sleep inside, she sleeps outside in public areas.

56.     Due to a disability, Williams cannot work at a traditional job.

57.     Williams engages in charitable solicitation on public sidewalks, or in public areas frequented by drivers near businesses in the Palm Beach Lakes

Boulevard area of the City of West Palm Beach, holding a small sign that usually says "Please help, I need money for food. God Bless" or something similar.

58.     Williams intends her sign to convey to passersby that she does not wish to be ignored, and wants to be heard. Plaintiff wants to express that she is hungry and that her hunger should not be invisible.

59.     Williams typically receives food, care packages containing water, hygiene products and clothing items, or gift cards.  Sometimes, passersby give Williams cash.

60.     Williams used to ask for charity in the downtown area of West Palm Beach but was told to move along by PSC security guards, and warned that if she did not, they would call City police to have her arrested.

61.     Williams has regularly been warned by City police that she cannot ask for charity. Williams has been told that she is violating the ordinance prohibiting panhandling. Williams has been told by PSC security guards not to stand on public streets, medians, or sidewalks and ask for help in Downtown West Palm Beach.

62.     Williams used to hold signs on the off ramp of I-95 and Palm Beach Lakes Boulevard but was told by police that she had to leave or she would be arrested, telling her it was illegal to panhandle against traffic. Williams left the area to avoid being arrested and has since stopped holding her sign in visible places on roadways.

63.     As a direct consequence of the enforcement actions taken by Defendant pursuant to the ordinance, Williams has been chilled in the exercise of her

constitutionally protected rights to free speech and expression in quintessential public fora.

64.     Williams continues to hold signs on public sidewalks and in public areas near businesses in West Palm Beach as a means of communicating with fellow citizens. She is concerned that she will continue to suffer the same violations of her rights and that she will be prevented from doing so by being threatened with arrest, cited, and/or arrested by City police and/or their agents under the ordinance.

65.     As a result, and because of her fear of arrest and prosecution for a violation of the ordinance, Williams has relocated and reduced the frequency with which she solicits for donations in the City of West Palm Beach.

66.     Williams would like to continue to ask for charity without risking arrest.

**Gary Frashaw**

67.     Plaintiff Frashaw has lived in West Palm Beach for his entire life.

68.     Frashaw recently entered a housing program that provides him with temporary rental assistance. Before moving into his current apartment at the end of July 2021, he would sleep in public parks or other public areas of the City.

69.     When he did not have housing, Frashaw spent most of his time in the downtown area of West Palm Beach or in the Northwood Area because it is where he felt safest because there are other people in those areas.

70.     Due to a disability, Frashaw cannot work at a traditional job. Frashaw receives food stamp assistance.

71.     Frashaw is in the process of applying for disability benefits.

72.     Frashaw has engaged in charitable solicitation on public sidewalks and streets in the downtown area and Northwood neighborhood of the City, making oral requests for help. When Frashaw asks for help, he usually says, "I'm homeless, can you help me out with a few dollars or something to eat?" If they say no, then he may ask, "Can you take me to get something to eat?"

73.     Frashaw intends his speech to convey to passersby that he needs assistance and that anything can help him.

74.     Frashaw typically receives food, care packages containing water, hygiene products and clothing items, or gift cards. Sometimes, passersby give Frashaw cash.

75.     Frashaw has been warned repeatedly and told to move along by PSC security guards and has been threatened that if he did not move, they would call City police to have him arrested.

76.     Frashaw has regularly been warned by City police that he cannot ask for charity. Frashaw has been told that panhandling is not allowed by City ordinance. Frashaw has been told by both City police and PSC security guards not to stand on public streets, medians, or sidewalks and ask for help in the areas of Northwood and Downtown West Palm Beach.

77.     Frashaw, on multiple occasions, has tried to hold a sign on public streets, roadways, and sidewalks to ask for charity but stopped after being warned by City police that he would be arrested. Frashaw's sign had said "I'm homeless, anything helps, God bless" or something similar.

78.     Frashaw is chilled in the exercise of his constitutionally protected rights to free speech and expression in quintessential public fora.

79.     Frashaw intends to resume making both oral requests for assistance on public sidewalks and streets and holding a sign near public roadways in West Palm Beach as a means of communicating with fellow citizens. Frashaw presently limits how often and where he asks for help in downtown or Northwood areas of West Palm Beach because he does not want to risk being threatened with arrest, cited, and/or arrested by City police and/or their agents for violating the ordinance.

80.     As a result, and because of his experience with private security's threat to pursue arrest and prosecution for a violation of the ordinance, Frashaw significantly reduced the frequency with which he solicits for donations in the City of West Palm Beach and has limited his approach to only oral requests because of fear of prosecution.

81.     Frashaw would like to continue to ask for charity without risking arrest.

**Thomas Hyland**

82.     Plaintiff Thomas Hyland lived in West Palm Beach for four years.

83.     In June 2021, he found a job in Lake Worth that provides room and board. Prior to his recent employment, Hyland did not have a fixed address, and when he could not find a place to sleep inside, he would sleep inside shelters or outside in public areas or parks.

84.     Hyland recently began receiving food stamps.

85.     Prior to June 2021, Hyland would engage in charitable solicitation on public streets, medians, roadways, or sidewalks in public areas frequented by drivers at off-ramps in multiple locations throughout the City of West Palm Beach, holding a sign that usually says, "Anything helps, thanks."

86.     Hyland intended his oral requests to convey to passersby that he needs assistance and that anything can help him.

87.     Hyland typically would receive food, care packages containing water, hygiene products and clothing items, or gift cards.  Sometimes, passersby would give Hyland cash.

88.     Hyland asked for charity off roadways near the I-95 and 45th Street area of West Palm Beach but was warned and told to move along by City police, or that he would be arrested. Hyland has been told that he is violating the City ordinance prohibiting panhandling.

89.     Hyland, until April 2021, stood by roadways and I-95 off-ramps near the Palm Beach Lakes Boulevard area of West Palm Beach seeking charity of vehicles passing by. Hyland was warned by City police to stop holding his sign and to move along or that he would be arrested.

90.     Hyland has been told by City police not to stand on public streets, medians, roadways, or sidewalks and ask for help in the City of West Palm Beach.

91.     Hyland has tried to hold a sign outside of West Palm Beach City limits but has been stopped and warned by the Palm Beach County Sheriff. Plaintiff has

been told that it is illegal to hold his sign and ask for help in the County as well as the City.

92.    Hyland, because of receiving consistent warnings by City police, had reduced the number of hours he stood on roadways seeking charity.

93.    Hyland is chilled in the exercise of his constitutionally protected rights to free speech and expression in quintessential public fora.

94.    Hyland has stopped holding signs on public roadways and in public areas in the City as a means of communicating with fellow citizens. He is concerned that he will continue to suffer the same violations of his rights and that he will be prevented from doing so by being threatened with arrest, cited, and/or arrested by the City and/or its agents under the ordinance.

95.    As a result, and because of his experience of threat of arrest and prosecution from City police for a violation of the ordinance, Hyland had reduced the frequency with which he solicited for donations in the City of West Palm Beach and prior to finding employment relocated his practices for soliciting for donations to outside the City of West Palm Beach for fear of prosecution.

96.    Hyland would like the option to continue to ask for charity without risking arrest.

**Injury to Plaintiffs**

97.    Defendant's policy, practice, and/or custom of enforcing the ordinance was and is the direct and proximate cause of the constitutional violations complained of herein.

98.     As a direct and proximate cause of Defendant's policy, practice, and/or custom of enforcing the ordinance against individuals engaging in charitable solicitation, Plaintiffs have suffered damages including emotional distress, fear, humiliation, loss of liberty, loss of opportunity to request and receive charitable donations, and loss of opportunity to speak and engage in free expression.

99.     Plaintiffs have suffered harm and, absent extraordinary relief from this Court, Plaintiffs will continue to suffer irreparable harm by unwarranted violations of their constitutional rights.

100.     An injunction is required as damages alone are not an adequate remedy at law. Damages cannot fully compensate Plaintiffs for the ongoing loss of their constitutional rights.

## CLAIM FOR RELIEF
## FIRST AMENDMENT

101.     The allegations of paragraphs 1 through ___ are incorporated into the Claim for Relief as though fully set forth herein.

102.     The challenged provisions of the ordinance, codified in § 54-147(a)(1) and § 54-127(2), (3) & (5) of the City Code, are an unconstitutional infringement, on their face and as applied to Plaintiffs, of Plaintiffs' affirmative rights to freedom of speech and expression secured by the First Amendment to the U.S. Constitution.

103.     The ordinance is an impermissible content-based restriction on speech. The ordinance seeks to limit constitutionally protected speech and manners of expression based on subject matter of the speech, and on sidewalks, streets, medians, and parks, which are traditional public fora.

104.    The ordinance singles out a single subject matter -- charitable solicitation.  A determination as to whether an individual is violating the ordinance requires a law enforcement officer to examine the content of a person's speech.

105.    City police and private security, acting in coordination with or at the direction of the City, have warned Plaintiffs to stop asking for charity and to move along under penalty of arrest.

106.    The City continues to enforce the ordinance to prohibit Plaintiffs and other homeless individuals from engaging in charitable solicitation in traditional public fora.

107.    The ordinance is not narrowly tailored to meet a compelling government interest.

108.    The City's purported interests in preserving access to and enjoyment of public spaces, protecting commercial interests, and preventing people and businesses from "disturbing or disruptive" speech are not recognized as compelling interests under the First Amendment to justify content-based restrictions on speech.

109.    There is no compelling government interest that is furthered by content-based restrictions on speech.

110.    The City's purported interests in keeping pedestrian walkways and rights-of-way free from obstructions so as not to impede fire and police department access to such rights-of-ways to "save lives" are not furthered by censoring only certain messages expressed by as few as one individual in a traditional public forum. The City has means available to it that are less intrusive on speech.

111. Even if the City had a compelling interest, the ordinance fails strict scrutiny as it is not narrowly tailored.

112. Plaintiffs challenge the facial validity of the ordinance on behalf of themselves, and on behalf of third parties not before the Court, due to the substantial overbreadth of the City's regulations that sweeps into their ambit a substantial amount of constitutionally protected speech.

113. Defendants and their agents have enforced the ordinance against individuals asking for charity in the City through warnings, citations, and arrests. Plaintiffs have a credible threat of future prosecution under the ordinance through warnings and orders to move along under threat of arrest by City police and/or their agents.

114. As a direct and proximate result of Defendant and their agents' enforcement actions, Plaintiffs are deprived of their right to free speech in quintessential public fora, and the ordinance have a chilling effect on constitutionally protected expression.

115. Plaintiffs have suffered, and continue to suffer, irreparable harm and have been damaged as a direct result of Defendant's enforcement of this ordinance.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Issue an injunction preventing Defendant from enforcing the challenged provisions of the City's panhandling and soliciting ordinance codified in § 54-147(a)(1) and § 54-127(2), (3) & (5) of the City Code;

B. Enter a declaration that the challenged provisions of the City's panhandling and soliciting ordinance codified in § 54-147(a)(1) and § 54-127(2), (3) & (5) of the City Code is unconstitutional both facially and as applied to Plaintiffs by officers, agents, and employees of the City in violation of the First Amendment of the U.S. Constitution;

C. Award compensatory damages for Plaintiffs against Defendant, including for emotional distress, fear, humiliation, loss of liberty, opportunity to request and receive charitable donations, loss of opportunity to speak, and any other damages as permitted by law;

D. Award nominal damages for Plaintiffs against Defendant;

E. Award attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

F. Award such other relief as this Court deems just and proper.

Dated: August 30, 2021                    Respectfully submitted,

 /s/ *Jodi Siegel*
Jodi Siegel, Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
Simone Chriss, Fla. Bar No. 124062
S.D. Fla. admission pending
Simone.Chriss@southernlegal.org
Samantha Howell, Fla Bar No. 1017832
Samantha.howell@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890
Fax: (352) 271-8347

James K. Green, Fla. Bar No: 229466
Nancy A. Udell, Fla. Bar No: 125478

**James K. Green, P.A.**
Esperanté, Suite 1650
222 Lakeview Ave.
West Palm Beach, FL  33401
Tel:  561-659-2029
Fax:  561-655-1357
jkg@jameskgreenlaw.com

Jacqueline Nicole Azis, Fla. Bar No.101057
**ACLU Foundation of Florida**
4023 N. Armenia, Suite 450
Tampa, FL 33607
(786) 363-2708
Fax: (786) 363-2708
jazis@aclufl.org

Daniel Tilley, Fla. Bar No. 102882
**ACLU Foundation of Florida**
4343 W. Flagler St., Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org

Dante P. Trevisani, Fla Bar No. 72912
dtrevisani@floridajusticeinstitute.org
Ray Taseff, Fla. Bar No. 352500
rtaseff@floridajusticeinstitute.org
**Florida Justice Institute, Inc.**
PO Box 370747
Miami, FL 33137
305-358-2081
305-358-0910 fax

**ATTORNEYS FOR PLAINTIFFS**